FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA 28 PH 1:55
ORLANDO DIVISION

US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

| | | |
|---|---|---|
| INDYNE, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| ABACUS TECHNOLOGY | ) | 6:11-cv-137-Orl-19DAB |
| CORPORATION, JERRY | ) | |
| RENINGER, and MATTHEW | ) | |
| BOYLAN, | ) | |
| | ) | |
| **Defendants.** | | |

## COMPLAINT

Plaintiff InDyne, Inc. ("InDyne"), for its Complaint against Defendants

Abacus Technology Corporation ("Abacus"), Jerry Reninger ("Reninger"),

and Matthew Boylan ("Boylan"), states the following:

## PARTIES

1.     Plaintiff InDyne is a corporation organized under the laws of the

State of Maryland with its principal place of business in Reston, Virginia.

2.     Defendant Abacus is a corporation organized under the laws of

the State of Delaware with its principal place of business in Chevy Chase,

Maryland.

3.     Defendant Reninger is a former employee of Plaintiff InDyne, is

an employee of Defendant Abacus and is a resident of Cocoa, Florida.

4.     Defendant Boylan is a former employee of Defendant Abacus and is a resident of the State of Maryland.

## JURISDICTION AND VENUE

5.     InDyne brings this action seeking relief, in part, under the Copyright Act, 17 U.S.C. § 101, et seq.  Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a), (b).

6.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a) over the non-federal question claims in this action as they are related to the claims in the action over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1338(a).

7.     Venue for this action is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that one of the defendants resides or may be found in this judicial district and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

8.     InDyne is a high-technology firm specializing in information technology, science and engineering, and technical and administrative services.   InDyne has developed its Program Information Management System (PIMS), a highly flexible, Web-based, multidimensional management tool to manage and control work on performance-based contracts.

9.     InDyne published version 1.0 of PIMS in June 1997 and has released upgrade versions in 2003 (version 2.0) and 2006 (version 3.0). InDyne registered copyrights in both version 2.0 (Copyright no. TX0006879047) and version 3.0 (Copyright no. TX0006879048) of its PIMS software.

10.     InDyne's proprietary PIMS software, developed at InDyne's own expense, provides InDyne with a competitive advantage, is a cornerstone of InDyne's business operations and is a key to its profitable operation for the foreseeable future.

11.     InDyne performed during 2003 – 2008  the Kennedy Integrated Communications Services (KICS) Contract with the National Aeronautics and Space Administration (NASA) to deliver communications and information technology services at NASA's Kennedy Space Center (KSC).

3

PIMS was integral to InDyne's performance of the KICS Contract and to delivering required services to KSC personnel.

12.     As the KICS Contract, including option years, was concluding, NASA conducted a new procurement referred to as the Information Management and Communications Service (IMCS) procurement to provide the services that had been provided by the KICS Contract.   Abacus competed for the IMCS Contract award as did InDyne as part of the Aleut Team.  Abacus was awarded the IMCS Contract.

13.     NASA's IMCS procurement Request for Proposals and the awarded IMCS contract required the awardee, after a ninety day transition period, to commence on October 1, 2008 performing all functions that previously had been provided by InDyne on the KICS Contract.  Among the functions that Abacus was contractually required to deliver commencing on October 1, 2008 were all contract management system functions InDyne had been delivering using its proprietary PIMS system.

14.     During the 90 day transition from KICS to IMCS, NASA and Abacus had periodic transition meetings, as specified in the IMCS Contract, to facilitate the orderly cut-over of service delivery to Abacus on October 1, 2008.   During an August 2008 transition meeting with the NASA Contracting Officer for IMCS and NASA Division Chief Jeanne O'Bryan,

Abacus was told that NASA desired that Abacus employ an integrated web portal financial management system similar to the one employed by InDyne on the KICS Contract and that NASA wanted the web portal management system up and running immediately.

15.    InDyne learned almost immediately after Abacus commenced IMCS Contract Base Year performance that the contract management system Abacus was using to perform the IMCS Contract was a modified version of InDyne's proprietary PIMS system.

16.    InDyne, through its outside counsel, on October 10, 2008, demanded that Abacus cease using InDyne's intellectual property.  A series of communications between InDyne, through its outside counsel, and Abacus followed that culminated in Abacus writing InDyne on December 8, 2008 agreeing, as requested by InDyne, to provide access to an Abacus thumb-drive and an Abacus laptop.  In addition, Abacus provided signed statements from the following individuals:

- Dennis J. Yee, Abacus President.

- Richard Pectol, Abacus Chief Technology Officer,

- Matthew Boylan, Abacus initial web page designer, and

- Jerry Reninger, InDyne System/Database Administrator through September 30, 2008 and Abacus employee thereafter.

17.     InDyne retained Kroll OnTrack, which specializes in data recovery and computer forensics, to forensically examine the Abacus thumb drive and the Abacus laptop hard drive, claimed by Abacus to be the only two Abacus devices that contained InDyne's PIMS software.    InDyne provided these two devices and an InDyne PIMS server to Kroll OnTrack to perform a forensic analysis for evidence of copying, modifying, and deployment or execution of InDyne-developed computer software related to InDyne's proprietary PIMS software application by Abacus.    A true and correct copy of Kroll OnTrack's report of that forensic examination (without internal exhibits) is attached hereto as Exhibit "A," and it is incorporated herein by reference as if fully set forth herein.

18.     Key Kroll OnTrack forensic findings include the following:

a) The analysis of InDyne's PIMS server, the Abacus thumb drive and the Abacus laptop hard drive establish that on September 8, 2008, thousands of InDyne PIMS software files were compressed into zip files on the InDyne server and the identical zip files were copied onto Abacus' thumb drive and onto Abacus' laptop hard drive. The result was that *over 12,000* unique PIMS software files were found on the Abacus laptop hard drive.

b) On September 9, 2008, Abacus user matthewb081 (Matthew Boylan, based upon Abacus' signed statements), commenced configuring the PIMS software, copied from InDyne's PIMS server without permission the day before, so that the PIMS software could be run on the Abacus laptop in such a fashion that the Abacus laptop could both simulate a server and simulate a user terminal.

c) Commencing on or about September 9, 2008 Boylan commenced modifying InDyne's PIMS software to hide the fact that the software was stolen from InDyne by, among other things, substituting Abacus' name/logo for InDyne's name/logo, changing the PIMS Web Pages from displaying "Kennedy Integrated Communications Services" to displaying "Information Management and Communications Support," and changing KICS to IMCS.

d) On September 18, 2008 Reninger logged into InDyne's PIMS server from a non-InDyne facility in Cocoa Beach, Florida.  During this remote log in session, Reninger compressed thousands of PIMS software files into a zip file, this zip file was copied onto Abacus' thumb drive and ultimately copied from the Abacus thumb drive onto Abacus' laptop hard drive.  Minutes after Reninger compressed the PIMS software files into a zip file and the zip file was copied to the

Abacus thumb drive, Reninger deleted the zip file on InDyne's PIMS server to cover up his actions.

e) During September of 2008, Boylan was knowingly and willfully modifying PIMS code files marked as copyrighted by InDyne to appear as if they were Abacus' code files.

f) On October 2, 2008 Boylan made global changes to the modified PIMS software to change the software from running in a test environment to running in a production environment.

g) Also on October 2, 2008 Boylan created two zip files containing modified PIMS software, "forsteve.zip" and "formatt.zip," the only purpose of which would have been to transfer the modified PIMS software to other computers/servers.

h) When Boylan signed on December 9, 2008 his statement that was submitted by Abacus to InDyne, his statement was both false and also misleading in at least the following ways: 1) all PIMS software was not deleted from the Abacus' thumb drive, 2) Boylan created zip files containing the modified PIMS software, the only purpose of which was to transfer the modified PIMS software to other Abacus computers/servers, and 3) Boylan knew that the modified PIMS software was placed into production by Abacus.

8

i) When Abacus submitted Reninger's December 10, 2008 signed statement, it knew the statement was false and/or misleading because Abacus had made copies of the modified PIMS software for use and storage on media locations other than on the Abacus thumb drive and laptop.

19. Additional relevant facts concerning Reninger include the following:

a) Reninger was a System/Database Administrator for numerous KICS servers and applications, including PIMS. In that position, Reninger had full access to the InDyne's PIMS servers and modules in his capacity as a System/Database Administrator through the last day of the KICS Contract, September 30, 2008.

b) During the KICS to IMCS 90 day transition period, InDyne offered Reninger, and Reninger accepted, a retention bonus and a position on InDyne's Infrastructure Operations and Maintenance Services (IOMS) contract at Cape Canaveral Air Force Station, pending the award of that contract to InDyne.

c) After the award of the IOMS contract to InDyne on June 18, 2008, Reninger approached InDyne's Program Manager for IOMS in late August 2008 and proclaimed that he had been offered higher

compensation by Abacus to join Abacus' IMCS team.  Negotiations between InDyne and Reninger over his continued employment at InDyne ensued for several days until InDyne could no longer match the offers that Reninger conveyed he received from Abacus.

d) Reninger ceased employment with InDyne on September 30, 2008, the last day of the KICS Contract, and became an Abacus employee on October 1, 2008.  Reninger's access to InDyne's servers, including the PIMS server, was terminated with his departure from InDyne.

e) Abacus has admitted that Reninger, while still an InDyne employee, physically provided the PIMS software to Boylan on the Abacus thumb drive while both individuals were physically in the immediate vicinity of Kennedy Space Center in Florida.

## COUNT I
### (Copyright Infringement – 17 U.S.C. §§ 501, et seq.)

20.    InDyne adopts and incorporates the allegations in paragraphs 1 through 19 as if stated fully herein.

21.    InDyne registered its copyright in the software code for its proprietary PIMS software with the United States Copyright Office.

22.    Abacus, Reninger, and Boylan copied constituent elements of InDyne's proprietary PIMS software that were originally created by InDyne.

10

23.   InDyne has suffered actual damages as a result of the copying of its proprietary PIMS software by Abacus, Reninger, and Boylan.

24.   Abacus has realized ill-gotten profits as a result of its copying of InDyne's proprietary PIMS software.

25.   Abacus, Reninger, and Boylan have damaged InDyne in an amount to be determined at trial.  Abacus, Reninger, and Boylan also have caused InDyne irreparable harm, and InDyne will continue to be irreparably harmed, unless and until any and all further uses of InDyne's proprietary PIMS software by Defendants is enjoined.

26.   InDyne demands that it be awarded compensatory damages from Abacus, Reninger, and Boylan in an amount equal to InDyne's actual damages suffered as a result of the unauthorized copying of its proprietary PIMS software as well as any additional profits realized by Defendants as a result of their unauthorized copying of InDyne's proprietary PIMS software.

### COUNT II
### (Misappropriation of Trade Secrets Under the
### Florida Uniform Trade Secrets Act– F.S.A. §§ 688.001, et seq.)

27.   InDyne adopts and incorporates the allegations in paragraphs 1 through 26 as if stated fully herein.

28.    InDyne's proprietary PIMS software has independent economic value to InDyne that is derived, in part, from the fact that it is not generally known by others who might profit from its use or disclosure.

29.    InDyne's proprietary PIMS software was not readily ascertainable by those persons outside of InDyne, including Defendants, who might profit from its use or disclosure.

30.    InDyne's proprietary PIMS software was subject to reasonable efforts by InDyne to maintain its secrecy.

31.    InDyne's proprietary PIMS software was misappropriated by Abacus, Reninger, and Boylan while they knew or had reason to know that it was acquired by improper means.

32.    InDyne's proprietary PIMS software was wrongfully disclosed by Reninger and wrongfully used by Abacus and Boylan, which knew InDyne's proprietary PIMS software was acquired by improper means.

33.    InDyne has suffered actual loss caused by this misappropriation of its proprietary PIMS software.  Further, Abacus, Reninger, and Boylan have been unjustly enriched through their misappropriation of InDyne's proprietary PIMS software.

34.    This misappropriation of InDyne's proprietary PIMS software by Abacus, Reninger, and Boylan was willful and malicious.

12

35.    InDyne demands that damages be awarded to it from Abacus, Boylan and Reninger in an amount equal to the actual loss caused by the misappropriation of InDyne's proprietary PIMS software plus the amount Abacus, Boylan and Reninger were unjustly enriched by the misappropriation.   In the alternative, InDyne demands that damages be awarded to it from Abacus, Boylan and Reninger in an amount equal to a reasonable royalty for the unauthorized copying, disclosure and use of InDyne's proprietary PIMS software.

36.    InDyne further demands that it be awarded exemplary damages against Abacus, Boylan and Reninger as a result of their willful and malicious misappropriation of InDyne's proprietary PIMS software.

37.    InDyne further demands that it be awarded it attorney's fees in this action from Defendants as a result of Defendants' willful and malicious misappropriation of InDyne's proprietary PIMS software.

## COUNT III
### (Civil Theft -- FSA § 772.11)

38.    InDyne adopts and incorporates the allegations in paragraphs 1 through 37 as if stated fully herein.

39.    Abacus knowingly obtained and used InDyne's PIMS software with the intent to either temporarily or permanently appropriate the PIMS software for its own use.

13

40.     InDyne has made a written demand upon Abacus for the payment of the greater of $200 or treble damages prior to 30 days of filing this action, and Abacus refused that demand.

41.     InDyne suffered actual loss caused by this misappropriation of its proprietary PIMS software, and InDyne demands that judgment be entered in its favor and against Abacus for treble the amount of InDyne's injury and loss.

42.     InDyne further demands that it be awarded exemplary damages against Abacus as a result of its willful and malicious misappropriation of InDyne's proprietary PIMS software.

43.     InDyne further demands that it be awarded its attorney's fees in this action as a result of Abacus's willful and malicious misappropriation of InDyne's proprietary PIMS software.

## COUNT IV
### (Intentional Interference with Contract/Business Relations)

44.     InDyne adopts and incorporates the allegations in paragraphs 1 through 43 as if stated fully herein.

45.     Reninger was bound by a non-disclosure and confidentiality agreement with InDyne not to share InDyne's confidential and proprietary property and trade secrets with any person or entity outside of InDyne.

14

46.     Abacus, itself a sophisticated technology firm and government contractor, knew or should have known that Reninger would be bound by such an agreement during and after his employment with InDyne.

47.     Abacus knowingly, willfully and maliciously interfered with Reninger's non-disclosure and confidentiality agreement with InDyne by inducing Reninger to copy and deliver to Abacus a copy of InDyne's proprietary PIMS software.

48.     InDyne has been injured as a result of Reninger's breach of his non-disclosure and confidentiality agreement with InDyne.

49.     InDyne demands that compensatory damages be awarded to it from Abacus as a result of its willful and malicious interference with InDyne's non-disclosure and confidentiality agreement with Reninger in an amount to be determined by a jury in this action.

50.     InDyne further demands that it be awarded exemplary damages against Abacus as a result of its willful and malicious interference with InDyne's non-disclosure and confidentiality agreement with Reninger.

## COUNT V
### (Conversion)

51.     InDyne adopts and incorporates the allegations in paragraphs 1 through 50 as if stated fully herein.

52. Abacus, Reninger, and Boylan, with actual malice and a reckless disregard for InDyne's rights, wrongfully asserted dominion over InDyne's proprietary PIMS software in a manner that was inconsistent with InDyne's exclusive ownership rights to the PIMS software.

53. InDyne demands that it be awarded damages against Defendants in an amount equal to the fair market value of its proprietary PIMS software on the date of the conversion, plus interest at the legal rate from the date of conversion until entry of the final judgment.

54. InDyne further demands that it be awarded exemplary damages against Abacus, Reninger, and Boylan as a result of Defendants' malice and reckless disregard of InDyne's rights to its proprietary PIMS software.

## COUNT VI
### (Fraudulent Concealment)

55. InDyne adopts and incorporates the allegations in paragraphs 1 through 54 as if stated fully herein.

56. Reninger, while an employee of InDyne, fraudulently and maliciously suppressed from InDyne during his employment that he illegally copied InDyne's proprietary PIMS software and delivered it to InDyne's competitor, Abacus, all while being compensated by InDyne for his continued employment and presumed faithful service.

16

57.    Reninger suppressed these facts from InDyne in order to induce InDyne to continue to compensate him for his continued employment for service on the KICS Contract and to induce InDyne to make offers of continued employment.

58.    InDyne was injured as a result of its justified reliance that Reninger was acting as a faithful employee and in the best and exclusive interest of his employer, InDyne.

59.    InDyne demands that damages be awarded to it from Reninger in an amount to be determined by a jury in this action.

60.    InDyne further demands that it be awarded exemplary damages against Reninger as a result of his willful and malicious suppression of facts from InDyne.

## COUNT VII
### (Civil Conspiracy)

61.    InDyne adopts and incorporates the allegations in paragraphs 1 through 60 as if stated fully herein.

62.    Abacus, Boylan, and Abacus' agents/employees conspired with Reninger to breach Reninger's non-disclosure and confidentiality agreement with InDyne through the copying and delivery by Reninger of InDyne's proprietary PIMS software to Boylan and Abacus.

63.    Abacus, Boylan, and Abacus' agents/employees conspired with Reninger to fraudulently suppress from InDyne Reninger's copying and theft of InDyne's proprietary PIMS software.

64.    Abacus, Boylan, and Abacus' agents/employees conspired with Reninger to convert and misappropriate InDyne's proprietary PIMS software.

65.    InDyne suffered actual damages as a result of these acts by Reninger, Abacus, Boylan and Abacus' agents/employees performed pursuant to their conspiracy.

66.    InDyne demands that compensatory damages be awarded to it from Abacus, Reninger, and Boylan in an amount to be determined by a jury in this action.

67.    InDyne further demands that it be awarded exemplary damages against Abacus, Reninger, and Boylan as a result of their conspiracy to injure InDyne.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff InDyne, Inc. requests entry of judgment in its favor and against Defendants Abacus Technology Corporation, Jerry Reninger and Matthew Boylan as follows:

A.     For a permanent injunction restraining and enjoining Abacus, Reninger, Boylan, their agents, servants and employees, and those persons in active concert, conspiracy, or participation with them, from using for any purpose InDyne's proprietary PIMS software and any copy or derivative of InDyne's proprietary PIMS software.

B.     For an accounting by Abacus, Reninger, and Boylan of all gains, profits and advantages derived from their unlawful activities, with such amount to be trebled as provided by law;

C.     For an award of compensatory damages as are available by statute or by common law in an amount to be proven at trial, with such amount to be trebled as provided by law;

D.     For an award of exemplary and punitive damages as are available by statute or by common law in an amount as may be awarded at trial;

E.     For an award of InDyne's costs of suit, including InDyne's attorneys' fees where provided by law; and

F.     For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims set forth in this complaint.


Date: _/- 28 - 2011_

Thomas H. Justice, III
Florida Bar No. 381934
1435 Lake Baldwin Lane, Suite A
Orlando FL 32814
Telephone: (407) 898-0655
Facsimile: (407) 898-0656
tomjustice@justicelawfirm.com

Douglas L. Patin
Bradley Arant Boult Cummings LLP
1615 L Street, N.W.
Suite 1350
Washington, DC 20036
Telephone: (202) 719-8241
Facsimile: (202) 719-8341
dpatin@babc.com

Jeffrey D. Dyess
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8288
Facsimile: (205) 521-8800
jdyess@babc.com


Attorneys for Plaintiff InDyne, Inc.

**Summons and Complaint are to be served on Defendants at the following addresses:**

Abacus Technology Corporation
ATTN: Dennis Yee, President
5454 Wisconsin Avenue, Suite 1100
Chevy Chase, MD 20815

Jerry Reninger
3985 Seville Ave.
Cocoa, FL 32926

Matthew Boylan
323 Branch Drive
Silver Spring, MD 20901-2615